**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|   |   |
|---|---|
| LINDA GOUGH, ) | |
| ) | |
| Plaintiff *pro se*, ) | |
| ) | Civil Action No. 22-cv-1176-LKG |
| v. ) | |
| ) | Dated: September 11, 2023 |
| ALLIED UNIVERSAL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

In this employment discrimination matter, Plaintiff *pro se*, Linda Gough, alleges that the Defendant, Allied Universal, discriminated and retaliated against her during her employment with the company, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; and the American with Disabilities Act ("ADA"); 42 U.S.C. § 12112 *et seq. See generally*, ECF No. 7.  Plaintiff also asserts claims against Allied Universal for workplace injury and violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201.  *Id*.

Allied Universal has moved to dismiss this matter, or, alternatively, to transfer venue, pursuant to Fed. R. Civ. P. 12(b)(3) and (b)(6).  ECF No. 10.  The motion is fully briefed.  ECF Nos. 7, 10-1, 14.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court: (1) **GRANTS** Allied Universal's motion to dismiss, or, alternatively, to transfer venue; and (2) **DISMISSES** the amended complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff *pro se*, Linda Gough, alleges that the Defendant, Allied Universal, discriminated and retaliated against her during her employment with the company, in violation of Title VII, the ADEA and the ADA. *See generally*, ECF No. 7. Plaintiff also asserts claims for workplace injury and violation of FLSA in the amended complaint. *Id*.

Plaintiff is a 51-year-old, White female, who resides in Bethesda, Maryland. *Id*. at 5.

Defendant Allied Universal is a security and facility services company headquartered in Santa Ana, California and Conshohocken, Pennsylvania. *See* https://www.aus.com.

<u>Plaintiff's Employment History</u>

On October 19, 2019, Allied Universal hired Plaintiff to work as a security officer for the company's Washington, DC office. ECF No. 7 at 2. Plaintiff is currently employed by Allied Universal in this capacity. *Id*. at 13. In December 2019, Plaintiff was assigned to Allied Universal's "SAIC" location. *Id*.

<u>Plaintiff's Discrimination Allegations</u>

In the amended complaint, Plaintiff alleges that she was subjected to discrimination and retaliation based upon her race, color, age, religion, national origin, and disability while assigned to Allied Universal's "SAIC" location. *Id*. Specifically, Plaintiff alleges that another security officer for Allied Universal, Officer Teashonnda Hubbard, discriminated against and harassed her at the "SAIC" location, by: (1) making inappropriate phone calls to Plaintiff; (2) sending Plaintiff inappropriate text messages; and (3) changing her work uniform in front of Plaintiff. *Id*. at 6.

Plaintiff also alleges that she was discriminated against, because she was the oldest member on the security officer team assigned to the "SAIC" location and because she was the

---

[1] The facts recited in this memorandum opinion and order are taken from the amended complaint (ECF No. 7); Allied Universal's motion to dismiss (ECF No. 10); the memorandum in support thereof (ECF No. 10-1); and Plaintiff's response in opposition to Allied Universal's motion to dismiss (ECF No. 14).

2

only White employee on her team. *Id*. at 13 and 15. Plaintiff also alleges that she reported her concerns about Officer Hubbard to her supervisor, Captain Phedra Vaval, and that Captain Vaval dismissed her concerns. *Id*. at 9

In addition, Plaintiff alleges that, in January 2021, she suffered a workplace injury, because Allied Universal did not accommodate her request to sit during certain work shifts. *Id*. at 15. And so, Plaintiff maintains that this workplace injury caused her pain and resulted in her having to undergo surgery.[2] *Id*. at 14-15.

On October 1, 2021, Plaintiff filed an internal complaint against Captain Vaval and two other Allied Universal managers, Kevin Ringgold and Lawrence Clottey, alleging, among other things, that: (1) she suffered workplace harassment from Officer Hubbard since December 2019; (2) management had dismissed and failed to address this workplace harassment; (3) her rate of pay made her ineligible to receive food stamps; and (4) she had been required to stand for "eight-hours straight" each day despite having requested a workplace accommodation to sit as needed. ECF No. 7-1. Plaintiff also sent letters regarding these concerns to Allied Universal's General Manager, Michael Fontz, on November 29, 2021, December 27, 2021, and May 9, 2022, respectively. *Id*. at 9-11.

In December 2021, Plaintiff communicated her concerns about Officer Hubbard to Allied Universal's human resources department. *Id*. Plaintiff alleges that she was subjected to retaliation after reporting her concerns to the human resources department, because Kevin Ringgold told her not to return to the "SAIC" worksite. *Id*. at 9, 14.

Lastly, Plaintiff alleges that Allied Universal may have manipulated her rate of pay to affect her eligibility for food stamps. *Id*. at 2, 12.

<div align="center">Plaintiff's Charge Of Discrimination</div>

On March 18, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based upon race, national origin,

---

[2] In February 2022, Plaintiff submitted a reasonable accommodation request form to Allied Universal's human resources department. ECF No. 7-1. In this form, Plaintiff requests the ability to "sit as needed" during her work shifts due to "neuroma in [her] foot." *Id*.

3

sex, religion, age and retaliation. *Id*. at 13; ECF No. 7-1 at 16-17. Plaintiff's charge of discrimination alleges that:

> I began working for Allied Universal as a security officer in or around October 2019. Shortly after hire, I began to encounter a hostile work environment. My relief, a special police officer, regularly reports to work late and ill prepared for duty. Upon her arrival, the officer intimidates, yells and harasses me as she inappropriately dresses in front of me preparing for duty. I complained to management beginning in and around December 2019, but my complaints were dismissed and I continued to work with the officer again in or around September 2021. On or about 01 October 2021, I complained about issues regarding my pay rate as hire. On or about 29 November 2021, I filed a grievance to address operational concerns. My complaints were never addressed and on or about 09 December 2021, I was instructed not to return to site for my regular shifts. I believe I was discriminated and retaliated against based on race (White/Caucasian), national origin (United States), sex (female), and religion (Catholic), in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I was discriminated and retaliated against based on age (50 years), in violation of the Age Discrimination in Employment Act of 1967, as amended.

*Id*. at 17. Plaintiff received a right-to-sue letter from the EEOC on or about March 28, 2022. *Id*.

### B. Procedural Background

Plaintiff commenced this matter on May 17, 2022. ECF No. 1. On August 15, 2022, Plaintiff filed an amended complaint. ECF No. 7.

On September 20, 2022, Allied Universal filed a motion to dismiss, or, alternatively, to transfer this matter, pursuant to Fed. R. Civ. P. 12(b)(3) and (b)(6). ECF No. 10. On October 18, 2022, Plaintiff filed a response in opposition to Allied Universal's motion. ECF No. 14.

Allied Universal's motion to dismiss, or, alternatively, to transfer this matter having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. *Pro se* Litigants

Plaintiff is proceeding in this matter without the assistance of counsel. And so, the Court must construe the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10, 101 S.Ct. 173, 66

L.Ed.2d 163 (1980). But in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *see also*, *Bell v. Bank of Am., N.A.*, No. 13-0478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations omitted). And so, if Plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

**B. Fed. R. Civ. P. 12 (b)(6)**

To survive a motion to dismiss, pursuant to Rule 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations raise a claim from merely speculative to "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating the sufficiency of a plaintiff's claim under Rule 12(b)(6), Courts must separate factual allegations from legal conclusions. Factual allegations are assumed to be true and are construed in the light most favorable to the plaintiff. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). But, the Court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Alive Church of the Nazarene, Inc. v. Prince William Cnty., Va.*, 59 F.4th 92, 101 (4th Cir. 2023) (internal quotation marks omitted).

**C. Fed. R. Civ. P. 12 (b)(3) And Title VII Claims**

When a plaintiff's chosen forum is improper, federal courts may dismiss or transfer the case to the proper forum. *See* Fed. R. Civ. P. 12(b)(3); *see also*, *Tusha v. Greenfield*, No. CV GLR-20-2143, 2021 WL 1530211, at *3 (D. Md. Apr. 19, 2021). Under 28 U.S.C. § 1391, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events giving rise to the claim occurred, or a substantial *1106 part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this

>section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3); *see also Tusha*, at *5.  Title VII's venue provision also provides that:

>Title VII claims may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).  "Should the Court determine that venue proves improper, the Court shall dismiss the case, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Colony Ins. Co. v. Progressive Cas. Ins. Co.*, 531 F. Supp. 3d 1102, 1106 (E.D. Va. 2021) (quoting 28 U.S.C. § 1406(a)) (internal quotation marks omitted).

This Court has found venue in the District of Maryland to be improper when a plaintiff brings suit based upon claims arising from employment in Washington, DC.  *See Benton v. England*, 222 F. Supp. 2d 728, 731 (D. Md. 2002) (finding venue to be improper in Maryland where Plaintiff lived in Maryland but sued based on previous employment in Washington, DC.).  The Court has also held that it is appropriate to transfer ADEA claims to another venue, when a plaintiff asserts both ADEA and Title VII claims in the complaint and venue for the Title VII claims is not proper in the District of Maryland.  *Id.* (transferring ADEA claims despite venue not being improper as to those claims in isolation).  The Court need not, however, transfer any claims based on improper venue, if the Court determines that such a transfer would not be in the interest of justice because the claims should be dismissed.  *See Howard-Moore v. McHugh,* Civ. No. JFM-11-283, 2012 WL 1657142, at *1 (D. Md. May 9, 2012) (concluding that it was not in the "interest of justice" to transfer claims, and instead dismissing claims brought in the District of Maryland based on employment in Washington, DC, where claims were otherwise subject to dismissal).

### D. Title VII

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e. The United States Supreme Court has characterized Title VII's charge filing requirement as a "non-jurisdictional claim-processing rule." *Fort Bend Cnty., Texas v. Davis*, 204 L. Ed. 2d 116, 139 S. Ct. 1843, 1844 (2019). While a non-jurisdictional processing rule does not give the Court jurisdictional grounds to hear a case, the rule is mandatory if "it require[s] parties to take certain procedural steps in, or prior to, litigation." *Id*. at 1844. And so, the Court must enforce the rule if it is timely raised. *See id*.

Under Title VII, a plaintiff must file a charge with the EEOC before filing suit in a federal court. 42 U.S.C. § 2000e–5(f)(1) (Title VII). In this regard, the Fourth Circuit has held that a plaintiff fails to exhaust his administrative remedies when the allegation in the administrative charge do not "reasonably relate[] to the factual allegations in the formal litigation . . . ." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted); *see also Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (same); *see also Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) ("[O]nly th[e] discrimination claims stated in the initial charge . . . reasonably related . . . and . . . developed by reasonable investigation . . . may be maintained in a subsequent Title VII lawsuit."). And so, a Title VII plaintiff's claims are not exhausted: (1) "if the administrative charge alleges one type of discrimination . . . and the claim encompasses another type . . ." or (2) if the "allegation of a discrete act or acts in an administrative charge . . . subsequently alleges a broader pattern of misconduct." *Chacko*, 429 F.3d at 509 (citation omitted); *see also Walton*, 33 F.4th at 172-74 (noting that a discrimination claim cannot exceed the scope of the administrative charge).

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Id.* (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)). Under this method, "the plaintiff 'must produce direct evidence of a stated

purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Id.* (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (brackets existing)).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*. *Tuck*, 973 F.2d at 374-75. Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. A plaintiff may establish a prima facie case of discrimination upon the basis of race, color, gender, or national origin under Title VII by showing: (1) the plaintiff's membership in a protected class; (2) an adverse employment action; (3) satisfactory job performance; and (4) that similarly-situated employees outside the protected class received more favorable treatment. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004). The failure to demonstrate one of these required elements is fatal to a Title VII plaintiff's ability to establish a prima facie case. *See Hemphill v. Aramark Corp.*, No. 12-1584, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (outlining elements of prima facie case for national origin discrimination under Title VII). A Title VII plaintiff can establish a prima facie case of discrimination based upon religion by showing that: (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir.1996).

If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's prima facie case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas Corp.*, 411 U.S. at 804). And so, "[t]he plaintiff always bears the ultimate

burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

To establish a hostile work environment claim, a Title VII plaintiff must allege workplace harassment that: "(1) was 'unwelcome'; (2) was based on [her protected status]; (3) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere'; and (4) was, on some basis, imputable to the employer.'" *See, e.g., Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019) (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).  A plaintiff must also present a particularized basis for alleging that discriminatory conduct was because of membership in a protected class. *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md. 2015).

Lastly, Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against [an] . . . employee[] . . . because he has opposed any practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . ." 42 U.S.C. § 2000e-3.  A Title VII plaintiff "may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or *via* the application of the *McDonnell Douglas* burden-shifting framework." *Roberts*, 998 F.3d at 122 (citation omitted).  And so, a Title VII plaintiff may prevail under the burden-shifting framework by showing that she: (1) "engaged in protected activity;" (2) "his employer took an adverse action against him;" and (3) that "a causal relationship exist[s]" between plaintiff's protected activity and the employer's adverse action. *See id*.

E.     **The ADEA**

The ADEA prohibits an employer from, among other things, discharging any individual, or otherwise discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age.  29 U.S.C. § 623(a)(1).  To establish a prima facie case of age discrimination under the ADEA, plaintiff must prove that she:  (1) was protected by the ADEA; (2) suffered an adverse employment action; (3) was performing her job at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by a substantially younger worker. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993).  Under the ADEA, a plaintiff must file a charge with the EEOC before filing suit in a federal court.  29 U.S.C. § 626(d).

Similar to claims brought under Title VII, a plaintiff may proceed under the *McDonnell Douglas* framework to establish a prima facie case of age discrimination under the ADEA. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

### F.  Workplace Injury And FLSA Claims

When an employee is seeking redress for a workplace injury that occurred during the course of their employment in the District of Columbia, the "exclusive remedy for a workplace injury" is through the District of Columbia Workmen's Compensation Act. *Legesse v. Rite Aid Corp.*, No. CIV. A. 06-00495 (RC, 2007 WL 1191827, at *2 (D.D.C. Apr. 23, 2007); *see also*, *Vanzant v. Washington Metro. Area Transit Auth.*, 557 F. Supp. 2d 113, 117 (D.D.C. 2008) (citing D.C. Code § 32–1504(a)). Lastly, the Fair Labor Standards Act mandates that employers pay a minimum wage to covered employees for each hour worked and pay overtime for work in excess of 40 hours per workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1).

### IV.  ANALYSIS

Allied Universal has moved to dismiss this matter upon the grounds that: (1) Plaintiff has not exhausted her administrative remedies with regards to her disability discrimination and retaliation claims in this case; (2) Plaintiff cannot bring her workplace injury claim in this forum; (3) Plaintiff fails state plausible claims for discrimination and retaliation based upon race, national origin, color, age, religion and a hostile work environment; and (4) Plaintiff fails to state a plausible FLSA claim in the amended complaint. ECF No. 10-1. Allied Universal also seeks to transfer Plaintiff's Title VII and ADEA claims to the District of Columbia, because venue for these claims is not proper in the District of Maryland. *Id*. at 11-12.

Plaintiff does not substantively respond to Allied Universal's arguments in her response in opposition. *See generally*, ECF No. 14. But Plaintiff generally argues that she states plausible discrimination and retaliation claims in the amended complaint and that venue is proper in the District of Maryland for these claims, because Allied Universal does business in Montgomery County, Maryland. ECF No. 14. And so, Plaintiff requests that the Court deny Allied Universal's motion. *Id*.

For the reasons that follow, Plaintiff has not exhausted her administrative remedies with regards to her disability discrimination and retaliation claims in this case. Plaintiff also cannot

pursue her workplace injury claim in this District, because this claim must be brought in the District of Columbia.

A careful reading of the amended complaint also shows that Plaintiff fails to state plausible discrimination and retaliation claims, based upon race, national origin, color, religion and a hostile work environment. A careful reading of the amended complaint similarly shows that Plaintiff fails to state plausible ADEA and FLSA claims in this case. And so, the Court: (1) GRANTS Allied Universal's motion to dismiss, or, alternatively, to transfer venue; and (2) DISMISSES the amended complaint.

### A.      Plaintiff Has Not Exhausted Her Disability Discrimination Claims

As an initial matter, to the extent that Plaintiff alleges disability discrimination and retaliation claims in the amended complaint, Allied Universal persuasively argues that the Court must dismiss these claims for failure to exhaust administrative remedies. Under Title VII and the American with Disabilities Act, Plaintiff must file a charge of discrimination with the EEOC before filing suit in a federal court. 42 U.S.C. § 2000e–5(f)(1) (Title VII); *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 777 (D. Md. 2020) (outlining the exhaustion requirement). The Fourth Circuit has held that a plaintiff fails to exhaust administrative remedies when the allegations in the administrative charge do not "reasonably relate[] to the factual allegations in the formal litigation . . . ." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted); *see also Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (same); *see also Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) ("[O]nly th[e] discrimination claims stated in the initial charge . . . reasonably related . . . and . . . developed by reasonable investigation . . . may be maintained in a subsequent Title VII lawsuit.").

A careful reading of Plaintiff's charge of discrimination in this case makes clear that Plaintiff did not raise her disability discrimination and retaliation claims before the EEOC prior to commencing this action. Notably, Plaintiff alleges in her charge of discrimination that she was subjected to a hostile work environment, and that she was discriminated and retaliated against based upon her race, national origin, sex, religion and age, in violation of Title VII and the ADEA. ECF No. 7-1 at 17. The charge of discrimination is, however, devoid of any facts or allegations stating that Plaintiff suffered a disability, or was discriminated or retaliated against based upon such a disability in violation of the ADA. *Id*. at 12-17. Given this, the Court agrees

with Allied Universal that Plaintiff's charge of discrimination lacks sufficient allegations for the EEOC to uncover her disability claims during a reasonable investigation.  *See Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 640 (D. Md. 2002) (plaintiff's civil action for an ADA claim found to have exceeded the scope of what a reasonable investigation by the EEOC might have uncovered where plaintiff failed to either check the box for disability or mention disability in his Charge narrative).  Any retaliation claim in this case based upon Plaintiff's alleged disability, is similarly precluded for failure to exhaust administrative remedies.  *See Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149-50 (4th Cir. 1999) (holding that retaliation claim was subject to dismissal where not properly exhausted).  And so, the Court DISMISSES these claims. Fed. R. Civ. P. 12(b)(6).

> **B.   Plaintiff Cannot Pursue Her Workplace Injury Claim In This Forum**

Allied Universal also persuasively argues that the Court should dismiss Plaintiff's workplace injury claim, because this claim must be brought in the District of Columbia.  In the amended complaint, Plaintiff alleges that she suffered a workplace injury in January 2021, while employed at Allied Universal's "SAIC" worksite located in Washington, DC.  *See generally*, ECF No. 7.  The United States District Court for the District of Columbia has held that, when an employee is seeking redress for a workplace injury that occurred during the course of their employment in the District of Columbia, the "exclusive remedy for a workplace injury" is through the District of Columbia Workmen's Compensation Act.  *See Legesse v. Rite Aid Corp.*, No. CIV. A. 06-00495 (RC, 2007 WL 1191827, at *2 (D.D.C. Apr. 23, 2007). Given this, Plaintiff must bring her workplace injury claim in the District of Columbia before the District of Columbia Department of Employment Services' Administrative Hearings Division.  *Id*. And so, the Court also DISMISSES this claim.

> **C.   Plaintiff Fails To State Plausible Title VII Claims**

Turning to the merits of Plaintiff's discrimination and retaliation claims brought pursuant to Title VII, a careful reading of the amended complaint shows that Plaintiff fails to state plausible discrimination claims based upon race, color, national origin, or religion in this case. And so, the Court also DISMISSES these claims.  Fed. R. Civ. P. 12(b)(6).

First, Plaintiff fails to allege sufficient facts to state plausible discrimination or retaliation claims based upon her race or color.  To establish a prima facie case of disparate treatment upon

12

the basis of race or color under Title VII, Plaintiff must show, among other things, that similarly-situated employees outside her protected class received more favorable treatment, or that adverse employment decisions were made based upon the protected category, *i.e.*, race or color. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004). In the amended complaint, Plaintiff alleges that she was discriminated against, because she was the only White employee on her team and "possibly one of a few [White] people at the Washington, DC Office." ECF No. 7 at 13 and 15.

Taken as true, these allegations are simply not sufficient to state plausible discrimination and retaliation claims based upon color or race. Notably, the amended complaint contains no allegations to show that similarly-situated employees of another race, or color received more favorable treatment than Plaintiff. *See generally*, ECF No. 7. The amended complaint also lacks any allegations to show that adverse employment decisions were made at Allied Universal based upon either race or color. *Id.* Because Plaintiff fails to state plausible discrimination and retaliation claims based upon race or color in the amended complaint, the Court DISMISSES these claims.

A careful reading of the amended complaint also makes clear that Plaintiff fails to state plausible discrimination and retaliation claims based upon national origin and religion in this case. To establish a prima facie case of discrimination based upon national origin, Plaintiff must show that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff can establish a prima facie case of discrimination based upon religion, by showing that: (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir.1996).

Here, Plaintiff alleges that she was discriminated against upon the bases of her national origin (United States) and religion (Catholic), because she is not aware of the religion or national origin of her co-workers or the management at Allied Universal. ECF No. 7 at 14. The amended complaint is devoid of any other factual allegations to show that similarly situated employees

13

outside of Plaintiff's class received more favorable treatment, or that Plaintiff either, (1) has a bona fide religious belief that conflicts with an employment requirement; (2) informed the employer of this belief; or (3) was disciplined for failure to comply with the conflicting employment requirement. *See generally*, ECF No. 7. Given this, the Court also DISMISSES Plaintiff's national origin and religion-based discrimination and retaliation claims.

### D. Plaintiff Fails To State A Hostile Work Environment Claim

While a somewhat closer issue, a careful reading of the amended complaint also shows that Plaintiff fails to state a plausible hostile work environment claim in this case. To state a hostile work environment claim, Plaintiff must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, color, age, national origin or religion; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 305 (4th Cir. 2019); *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d. 761, 765 (4th Cir. 2003); *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). As the Fourth Circuit has recognized, Plaintiff is not charged with pleading facts sufficient to *prove* her hostile work environment claims at this stage in the litigation. *Bass,* 324 F.3d. at 765. But Plaintiff is required to allege facts to support a claim for relief. *Id*.

Plaintiff has not met this burden here. The amended complaint lacks sufficient facts to state the elements of a hostile work environment claim based upon either Plaintiff's sex, race, color, age, national origin, or religion. Plaintiff alleges that Officer Teashonnda Hubbard discriminated against and harassed her at the "SAIC" location, by: (1) making inappropriate phone calls to Plaintiff; (2) sending Plaintiff inappropriate text messages; and (3) changing her work uniform in front of Plaintiff. ECF No. 7 at 6. Plaintiff also alleges that her supervisors, Captain Phedra Vaval, Kevin Ringgold and Lawrence Clottey, failed to address this alleged workplace harassment and dismissed Plaintiff's concerns. *Id*. at 6-7.

But Plaintiff offers no facts in the amended complaint to show that the alleged hostile work environment and workplace harassment was due to her gender, race, color, age, national origin, or religion. *See generally*, ECF No. 7. Indeed, when construed in the light most favorable to Plaintiff, the factual allegations in the amended complaint about the alleged

14

workplace harassment of Plaintiff do not appear to have any connection to Plaintiff's gender, race, color, age, national origin or religion. *Id*.

Given this, the factual allegations in the amended complaint, taken as true, simply do not describe the type of gender, race, color, age, national origin or religion-based activity that is necessary to state a hostile work environment claim. And so, the Court also DISMISSES Plaintiff's hostile work environment claim.

### E. Plaintiff Fails To State Plausible ADEA And FLSA Claims

As a final matter, Plaintiff's ADEA and FLSA claims are also problematic. First, Plaintiff fails to state a viable claim under the ADEA in the amended complaint. To establish a prima facie case of age discrimination under the ADEA, Plaintiff must prove that she: (1) was protected under the ADEA; (2) suffered an adverse employment action; (3) was performing her job at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by a substantially younger worker. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). In the amended complaint, Plaintiff alleges that Allied Universal discriminated and retaliated against her upon the basis of her age, because she is 51 years old and the oldest security officer at the "SAIC" worksite. ECF No. 7 at 13. While Plaintiff also generally alleges that younger employees were treated more favorably than she was while employed by Allied Universal, the amended complaint lacks factual allegations to show how the younger employees at Allied Universal were treated more favorably. ECF No. 7 at 15.

The amended complaint also fails to identify an adverse employment action related to Plaintiff's age, or to allege any facts to show that Plaintiff engaged in a protected activity upon the basis of her age. *See generally*, ECF No. 7. Given these deficiencies, the Court agrees with Allied Universal that Plaintiff fails to allege plausible ADEA claims in this case. And so, the Court DISMISSES Plaintiff's ADEA claims.

Plaintiff similarly fails to state a viable claim under the Fair Labor Standards Act in this matter. The FLSA mandates that employers pay a minimum wage to covered employees for each hour worked and pay overtime for work in excess of 40 hours per workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1). But, Plaintiff does not allege that Allied Universal failed to pay her a minimum wage or to properly compensate her for overtime work in the amended complaint. *See generally*, ECF No. 7. Rather, Plaintiff alleges that her pay rate was too high to allow her to

receive food stamps and that her rate of pay may have been manipulated to impact her eligibility to receive food stamps. ECF No. 7 at 5 and 10. Taken as true, these factual allegations do not plausibly state a claim under the FLSA. And so, the Court must also DISMISS Plaintiff's FLSA claim.[3]

## V.   CONCLUSION

In sum, Plaintiff has not exhausted her administrative remedies with regards to her disability discrimination and retaliation claims in this case. Plaintiff also cannot pursue her workplace injury claim in this District, because this claim must be brought in the District of Columbia. A careful reading of the amended complaint also shows that Plaintiff fails state plausible discrimination and retaliation claims, based upon race, national origin, color, religion and a hostile work environment. A careful reading of the amended complaint similarly shows that Plaintiff fails to state a plausible ADEA and FLSA claims in this case. And so, for the foregoing reasons, the Court:

(1)   **GRANTS** Allied Universal's motion to dismiss or, alternatively, to transfer venue; and

(2)   **DISMISSES** the amended complaint.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[3] Because the Court concludes that it must dismiss all of Plaintiff's claims in this action, the Court does not address Allied Universal's motion to transfer venue.